**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SEDA FRANCE, INC., | § | CASE NO. 10-_____-___ |
| | § | CHAPTER 11 |
|     DEBTOR | § | |
| | § | |
| 8301 SPRINGDALE ROAD, #800 | § | |
| AUSTIN, TEXAS 78724 | § | |
| | § | |
| TAXPAYER IDENTIFICATION NO.: | § | |
| 26-2145654 | § | |

## DISCLOSURE STATEMENT REGARDING
## CHAPTER 11 PLAN OF REORGANIZATION

### I.    INTRODUCTION

Seda France, Inc., the Debtor, submits this Disclosure Statement under section 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure to all of its known Creditors.

The purpose of this Disclosure Statement is to disclose information adequate to enable the Creditors and parties in interest to arrive at a reasonably informed decision in exercising the right to vote on the Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code (the "Plan"). A copy of the Plan is attached hereto as **Exhibit A.** Capitalized terms used herein, if not separately defined, have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules.

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide an opportunity for payment to each Class of Claims.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment you will receive under the Plan. It is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to explain fully various aspects of the Plan as it affects Creditors. If any questions arise, the Debtor urges you to contact the Debtor's counsel, and every effort will be made to resolve your questions. You may, of course, wish to consult with your own counsel.

A general discussion of the projected assets and distributions under the Plan are set out below in this Disclosure Statement. The following summary is general in nature. Creditors are referred to the full Disclosure Statement and Plan for a full discussion of these matters.

THERE CAN BE NO ASSURANCE THAT THE VALUES AND AMOUNTS REFLECTED IN THIS ANALYSIS WILL BE REALIZED AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

After a plan has been filed with a bankruptcy court, it must be accepted by holders of impaired claims against or interests in a debtor. Section 1125 of the Bankruptcy Code requires that a plan proponent fully disclose sufficient information about a debtor, its assets, and the plan to creditors and interest holders before acceptances of that plan may be solicited. This Disclosure Statement is being provided to the holders of Claims against the Debtor to satisfy such requirements of section 1125 of the Bankruptcy Code.

The Bankruptcy Code provides that creditors and interest holders are to be grouped into "classes" under a plan and that they are entitled to vote to accept or reject a plan by class. While courts have disagreed on the proper method to be used in classifying creditors and interest holders, a general rule of thumb (which is subject to exceptions) is that creditors with similar legal rights are placed together in the same class and that stockholders with similar legal rights are placed together in the same class. For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding subordinated unsecured claims might be placed in a separate class.

The Bankruptcy Code does not require that each claimant or interest holder vote in favor of a plan for the Court to confirm a plan. Rather, each class of claimants and interest holders must accept a plan (subject to the exception discussed below). A class of claimants accepts a plan if, of the claimants in the class who actually vote on a plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the plan. For example, if a hypothetical class has ten creditors that vote and the total dollar amount of those ten creditors' claims is $1,000,000.00, then for such class to have accepted the plan, six or more of those creditors must have voted to accept the plan (a simple majority), and the claims of the creditors voting to accept the plan must total at least $666,667.00 (a two-thirds majority).

The Court may confirm a plan even though fewer than all classes of claims and interests vote to accept the plan. In this instance, the plan must be accepted by at least one "impaired" class of claims, without including any acceptance of the plan by an insider. Section 1124 of the

4488109.1
59713.1

Bankruptcy Code defines "impairment" and generally provides that a claim as to which legal, equitable or contractual rights are altered under a plan is deemed to be "impaired."

If all impaired classes of claims and interests under a plan do not vote to accept the plan, the plan proponent is entitled to request that the Court confirm the plan pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. These "cramdown" provisions permit a plan to be confirmed over the dissenting votes of classes of claims and/or interests if at least one impaired class of claims votes to accept a plan (excluding the votes of insiders), and the Court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of claims and interests. The Bankruptcy Code provides several options for a plan to be "fair and equitable" to a secured creditor. Included among these options are that the secured creditor retains its lien and receives deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Court, whichever is less. With respect to a class of unsecured claims, the requirement that a plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim.

Independent of the acceptance of a plan as described above, to confirm a plan, the Court must determine that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. THE DEBTOR BELIEVES THAT THIS PLAN SATISFIES EACH OF THE CONFIRMATION REQUIREMENTS OF SECTION 1129(a) AND, IF NECESSARY, SECTION 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Code requires that the plan proponent solicit acceptances and rejections of the proposed plan before the plan can be confirmed by the Court. Before the plan proponent can solicit acceptances of the plan, the Court must approve the disclosure statement and determine that the disclosure statement contains information adequate to allow creditors to make informed judgments about the plan. After Court approval of the disclosure statement, the disclosure statement, the proposed plan and a ballot are sent to the holders of claims. The creditors will then have the opportunity to vote on the plan and should consider the approved disclosure statement for such vote.

On _____, the Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition for the Debtor's books and records to enable a hypothetical, reasonable investor typical of holders of Claims of the relevant Classes to make an informed judgment whether to vote to accept or reject the Plan. The Court's approval of this Disclosure Statement does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan. Likewise, although the Debtor and its counsel have utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor any of its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement. Further, nothing contained in this Disclosure Statement may be construed to be a representation or warranty, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the Debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

4488109.1
59713.1

At the hearing scheduled by the Court, the Court will consider whether the Plan should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan. **YOUR VOTE IS IMPORTANT.** In order for the Plan to be accepted, at least two-thirds in amount and more than one-half in number of the **voting Creditors** in each Class must affirmatively vote for the Plan. Even if all Classes of Claims accept the Plan, the Court may refuse to confirm the Plan. The Court must find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the Proponent of the Plan has also complied with the Bankruptcy Code. The Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Court must find that the Proponents of the Plan have disclosed the identity and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of Creditors and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the Debtor have been disclosed. The Court must additionally find that each Class of Claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain Priority Claims. If any Classes of Claims are impaired under the Plan, the Court must find that at least one Class of Claims that is impaired has accepted the Plan without counting any votes by insiders. The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further liquidation of the Debtor. Additionally, the Plan must provide for payment of certain required fees to the United States Trustee.

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF.**

NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.

## II. DESCRIPTION OF THE DEBTOR'S BUSINESS EVENTS LEADING TO THE CHAPTER 11 CASE

### A. General

The Debtor filed a voluntary bankruptcy petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas San Antonio Division on October 18, 2010 (the Petition Date), styled *In re Seda France, Inc.*, Case No. _____.

The Debtor is a Texas for-profit corporation that develops and internationally distributes home fragrance products, including, but not limited to, candles, bath and body products, diffusers, and room mists. The Debtor operates primarily as a wholesale distributor, marketing its products for resale to companies and/or individuals with store fronts. The Debtor's products are marketed through in-house employees and other independent contractor representatives along with showrooms located in New York, Los Angeles, Dallas, and Seattle. Additionally, the Debtor directly sells its products to its customers on its website located at www.sedafrance.com. Uniquely, the Debtor has a popular custom candle line that allows the Debtor's customers to custom design candles and the candles' packaging for resale or as gifts. For example, spas and other retail establishments have custom designed candles and packaging for resale that are appropriate for their businesses and brides/wedding planners have custom designed candles for guest's gifts at weddings.

4488109.1
59713.1

**B.      The Debtor's Schedules and Bar Date**

The Debtor's Bankruptcy Schedules were filed on October 18, 2010. The Bar Date in this case is_____.

**C.      Post Petition Operations**

As of the Petition Date, the Debtor began operating its business and managing its property as a Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

**D.      Aegis Texas Venture Fund II, L.P.**

In early 2008, the Debtor and Aegis Texas Venture Fund II, L.P. ("Aegis") commenced negotiations in an attempt to reach an agreement pursuant to which Aegis would loan funds to the Debtor. The following is a list of the documents circulated among the Debtor and Aegis during the negotiations: (1) Loan and Security Agreement ("Security Agreement"); (2) Intellectual Property Security Agreement ("IP Security Agreement"); (3) Tranche 1 Promissory Note ("Note"); (4) Warrant Purchase Agreement and Warrant to Purchase Shares of Common Stock of Seda France, Inc. ("Warrant Agreements"); and (5) Deposit Account Control Agreement ("Account Agreement") (when collectively, the "Loan Documents"). Although the parties reached a general agreement under which Seda France would borrow up to Two Million, Five Hundred Thousand Dollars ($2,500,000.00) from Aegis, upon information and belief, some, part, or all of the transactional documents were not executed by Aegis and the Debtor-in-Possession in identical form. In March of 2008, the Debtor borrowed One Million, Two Hundred Twenty Five Thousand Dollars ($1,250,000.00) from Aegis. In August of 2008, the Debtor borrowed an additional One Million, Two Hundred Twenty Five Thousand Dollars ($1,250,000.00) from Aegis (collectively, the "Borrowed Funds"). To date, the Debtor has repaid approximately One Million, Two Hundred Thousand Dollars (exactly $1,198,913.48) to Aegis. Although, upon information and belief, a complete and identical set of documents was never executed, the Debtor is informed that Aegis contends it has an enforceable lien upon virtually all of the assets of the Debtor to secure payment of the Borrowed Funds (the "Alleged Aegis Lien").

On July 21, 2010, after the Debtor began struggling to make payments as demanded by Aegis, and years after Aegis provided the Borrowed Funds to the Debtor-in-Possession, Aegis unilaterally filed a UCC Financing Statement with the Texas Secretary of State evidencing a security interest in:

> All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

4488109.1
59713.1

Then, on July 26, 2010, Aegis unilaterally filed a second UCC Financing Statement against Seda France, Ltd. with the Texas Secretary of State evidencing a security interest in slightly different collateral (when collectively, the "Aegis Financing Statements").

Two different law firms filed the differing Aegis Financing Statements. It would appear that Aegis was making a belated attempt to perfect the Alleged Aegis Liens and confusion ensued between the two law firms in describing the collateral within the Aegis Financing Statements. A contributing factor to this confusion was undoubtedly the fact that there was never a meeting of the minds between Aegis and Seda France on the form and content of any security agreement. In any event, because Aegis and Seda France had never reached and entered into an enforceable security agreement, the filing of the Aegis Financing Statements was done without approval of Seda France and was without legal right.

Between mid-July 2010 and the Petition Date, the Debtor-in-Possession made multiple proposals to Aegis. Aegis rejected each proposal, stating that it wanted to be given a large ownership position in the Debtor-in-Possession. For the protection of all creditors and parties-in-interest, the Debtor-in-Possession was forced to file for protection under the Bankruptcy Code.

On October 18, 2010, the Debtor-in-Possession filed an adversary proceeding [*Seda France, Inc. v. Aegis Texas Venture Fund II, L.P. (In re Seda France, Inc.)*; Adversary No. _____; United States Bankruptcy Court for the Western District of Texas, Austin Division] to avoid the Alleged Aegis Lien (the "Lien Adversary").

### E.     Christopher W. Munson and The Square Group, Inc.

From March 10, 2008, to June 21, 2010, Christopher W. Munson ("Munson"), the President of The Square Group, Inc. (the "Square Group"), was the Chief Financial Officer for the Debtor. During this time period, Munson altered the Debtor's financials and presented inaccurate/false financial statements to Aegis and, possibly, other potential lenders. Due to Munson's actions, the Debtor potentially has fraud and/or breach of fiduciary duty causes of action against Munson and/or the Square Group.

### III.     PLAN OF REORGANIZATION

### 3.1     Overview of the Plan and Anticipated Distribution

The Plan contemplates: (1) full payment, in cash, on the Effective Date, or as otherwise agreed, of all Allowed Administrative Claims; (2) full payment, through quarterly cash payments, of all Allowed Priority Tax Claims, together with interest at the rate required by 11 U.S.C. § 511, or as otherwise agreed, over a period through the fifth anniversary of the Effective Date; (3) full payment, through quarterly cash payments, of all Allowed Priority Non-Tax Claims, together with interest at the Priority Non-Tax Interest Rate, or as otherwise agreed, over a period through the fifth anniversary date of the Effective Date; (4) full payment, through quarterly cash payments, of all Allowed Secured Claims, together with interest at the Secured Claim Interest Rate, over a period through the fifth anniversary of the Effective Date; (5) full payment, through quarterly cash payments, commencing on the Effective Date, of all Vender Claims, together with interest at the Vendor Interest Rate, payment to be completed by the eighteenth month following the Effective Date; (6) full payment, through quarterly cash

payments, commencing on the Effective Date, of all Note Claims, together with interest at the Note Claim Interest Rate, payment to be completed by the eighteenth month following the Effective Date; (7) full payment, through quarterly cash payments, of all General Unsecured Claims, including the Aegis Unsecured Claim, together with interest at the General Unsecured Interest Rate, over a period through the sixth anniversary of the Effective Date.

Additionally: (1) the Reorganized Debtor shall litigate (and continue any litigation commenced by the Debtor-in-Possession) all Causes of Action including Avoidance Actions for the benefit of holders of Allowed General Unsecured Claims and shall make distributions to holders of Allowed General Unsecured Claims based upon the settlement or litigation of any Causes of Action including Avoidance Actions; and (2) each executory contract and unexpired lease to which Debtor is a party which has not previously been assumed or rejected shall be deemed rejected unless expressly assumed pursuant to the Plan as set forth in the attached **Exhibit A.** All objections to Claims not allowed herein must be filed within ninety (90) days following the Confirmation Date of the Plan, unless extended by the Bankruptcy Court.

### 3.2     Summary of the Plan

As provided in section 1123(a) of the Bankruptcy Code, Administrative Claims shall not be classified for purposes of voting under the Plan. The Allowed Claims against the Debtor are classified as set forth in this Article. A Claim is in a particular Class only to the extent that such Claim fits within the description of such Class, and is in such other and different Class or Classes to the extent that the remainder of such Claim fits within the description of such other Class or Classes. Any dispute with respect to classification of Claims or impairment shall be resolved by the Court upon motion of the holder of such Claim affected thereby, with notice to the Debtor. This Plan shall only provide Distributions to Allowed Claims; except as expressly provided herein nothing within this Plan shall Allow any Claim. The Allowed Claims are classified as follows:

| | |
|---|---|
| A. | **ADMINISTRATIVE CLAIMS** |
| B. | **PROFESSIONALS CLAIMS** |
| C. | **Class 1:  PRIORITY TAX CLAIMS** |
| B. | **Class 2:  PRIORITY NON-TAX CLAIMS** |
| C. | **Class 3:  SECURED CLAIMS** |
| D. | **Class 4:  VENDOR CLAIMS** |
| E. | **Class 5:  NOTE CLAIMS** |
| F. | **Class 6:  GENERAL UNSECURED CLAIMS** |
| G. | **Class 7:  EQUITY INTERESTS** |

### A.     Administrative Claims

<u>Administrative Claims</u>:  Except to the extent that any entity entitled to payment of any Allowed Administrative Claim agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as practicable, but not to exceed the later of (i) five (5) business days

4488109.1
59713.1

from the date such Administrative Claim becomes an Allowed Administrative Claim; or (ii) five (5) business days from the date of the Effective Date; provided, however, those Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtor on or after the Petition Date or assumed by the Debtor pursuant to this Plan or an order of the Court shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transactions and any agreements relating thereto or any order of the Court. An estimation of the amount of the Administrative Claims is attached hereto as ***Exhibit C***.

Administrative Claim Bar Date: The Plan constitutes a motion to fix and establish an administrative bar date of thirty (30) days following the Confirmation Date. Upon entry of the Confirmation Order, the Plan Proponents shall provide notice of such Administrative Claim Bar Date to every Person that may assert an Administrative Claim against the Debtor.

Administrative Claim Objection Deadline: This Plan constitutes a motion to fix and establish a deadline to object to timely filed Administrative Claims, such deadline being sixty (60) days following entry of the Confirmation Order.

**B.    Professionals Claims**

Claims of Professionals Bar Date: The Plan constitutes a motion to fix and establish a bar date of thirty (30) days following the Effective Date for the filing of final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date. All Professionals seeking compensation for unpaid services rendered or reimbursement of expenses incurred through and including the Effective Date shall file their respective applications no later than such date as set forth in this Section. Upon entry of the Confirmation Order, the Plan Proponents shall provide notice of such Bar Date to every Person that may assert a Claim for Professional fees against the Debtor.

Claims of Professionals Objection Deadline: The Plan constitutes a motion to fix and establish a deadline to object to timely filed Claims of Professionals, such deadline being sixty (60) days following the Effective Date.

Payment of Professionals Claims: Any Claims of Professionals approved by the Court shall be paid in Cash in such amounts as are Allowed by Final Order of the Court (a) within five (5) days following the date such Claim of a Professional becomes an Allowed Administrative Claim; or (b) upon such other terms as may be mutually agreed upon between such holder of a Claim and the Reorganized Debtors.

**C.    Class 1:  Allowed Priority Tax Claims**

This Class shall consist of Allowed Priority Tax Claims arising under section 507(a)(8) of the Bankruptcy Code.

Treatment: Each holder of an Allowed Priority Tax Claim shall be paid in full, through quarterly cash payments, its Allowed Priority Tax Claims, together with interest at the rate required by 11 U.S.C. § 511, or as otherwise agreed, over a period through the fifth anniversary of the Effective Date.

4488109.1
59713.1

Funding:  The Reorganized Debtor shall pay the Allowed Class 1 Claims with Cash, from funds available from operations of the Reorganized Debtor

Impairment & Voting:  Class 1 is unimpaired.

**D.      Class 2:  Allowed Priority Non-Tax Claims**

This Class shall consist of Allowed Priority Non-Tax Claims arising under Section 507(a)(4), (5) or (7) of the Bankruptcy Code.

Treatment:  Each holder of an Allowed Priority Non-Tax Claim shall be paid in full, through quarterly cash payments, its Allowed Priority Non-Tax Claim, together with interest at the Priority Non-Tax Claim Rate, or as otherwise agreed, over a period through the fifth anniversary of the Effective Date.

Funding:  The Reorganized Debtor shall pay the Allowed Class 2 Claims with Cash, from funds available from operations of the Reorganized Debtor

Impairment & Voting:  Class 2 is impaired.  Acceptance of this Plan from holders of Class 2 Claims will be solicited.

**E.      Class 3:  Allowed Secured Claims**

This Class shall consist of all claims secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount such subject to setoff, as the case may be.

Treatment:  Each holder of an Allowed Secured Claim shall be paid in full, through quarterly cash payments, its Allowed Secured Claim, together with interest at the Secured Claim Rate, or as otherwise agreed, over a period through the fifth anniversary of the Effective Date.

Funding:  The Reorganized Debtor shall pay the Allowed Class 3 Claims with Cash, from funds available from operations of the Reorganized Debtor.

Impairment & Voting:  Class 3 is impaired.  Acceptance of this Plan from holders of Class 3 Claims will be solicited.

**F.      Class 4: Allowed Vendor Claims**

This Class shall consist of all Allowed Vendor Claims.

Treatment:  Each holder of an Allowed Vendor Claim shall be paid in full, through quarterly cash payments, commencing on the Effective Date, its Allowed Vender Claim, together with interest at the Vendor Claim Interest Rate, payment to be completed by the eighteenth month following the Effective Date, or as otherwise agreed.

Funding:  The Reorganized Debtor shall pay the Allowed Class 4 Claims with Cash, from funds available from operations of the Reorganized Debtor.

4488109.1
59713.1

Impairment & Voting:  Class 4 is impaired.  Acceptance of this Plan from holders of Class 4 Claims will be solicited.

**G.     Class 5:  Allowed Note Claims**

This Class shall consist of all Allowed Note Claims.

Treatment:  Each holder of an Allowed Note Claim shall be paid in full, through quarterly cash payments, commencing on the Effective Date, its Allowed Note Claim, together with interest at the Note Claim Interest Rate, payment to be completed by the eighteenth month following the Effective Date, or as otherwise agreed.

Funding:  The Reorganized Debtor shall pay the Allowed Class 5 Claims with Cash, from funds available from operations of the Reorganized Debtor.

Impairment & Voting:  Class 5 is impaired.  Acceptance of this Plan from holders of Class 5 Claims will be solicited.

**H.     Class 6:  Allowed General Unsecured Claims**

This Class shall consist of all Allowed General Unsecured Claims, including, but not limited to, the Allowed Aegis Unsecured Claim.

Treatment:  Each holder of an Allowed Unsecured Claim shall be paid in full, through quarterly cash payments, commencing on the Effective Date, its Allowed General Unsecured Claim, together with interest at the General Unsecured Claim Interest Rate, over a period through the sixth anniversary of the Effective Date, or as otherwise agreed.

Funding:  The Reorganized Debtor shall pay the Allowed Class 6 Claims with Cash, from funds available from operations of the Reorganized Debtor.

Impairment & Voting:  Class 6 is impaired.  Acceptance of this Plan from holders of Class 6 Claims will be solicited.

**I.     Class 7:  Equity Interests**

Holders of equity in the Debtor will retain such interests but will receive no distribution of dividends until allowed claims of Classes 1 through 6 are paid in full.

Impairment and Voting: Class 7 is impaired.  Acceptance of this Plan from holders of Class 7 Interests will be solicited.

### 3.3     Provisions Relating to Payments

The record date for purposes of this Plan will be _____ (the "Record Date").  At the close of business on the Record Date, there shall be no further changes in the record holders of Claims.  The Reorganized Debtor shall have no obligation to recognize any transfer of any such Claims occurring after the Record Date and shall be entitled instead to

11

recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Record Date.

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the schedules filed by the Debtor with the Court unless superseded by the address as set forth on the proofs of Claim filed by such holders or other writing notifying the Debtor of a change of address. If any holder's Distribution is returned as undeliverable, unless otherwise provided by applicable law or local rule, no further Distributions to such holder shall be made unless and until the Reorganized Debtor are notified of such holder's then current address, at which time all missed Distributions shall be made to such holder, without interest. Unless otherwise provided by applicable law or the Bankruptcy Rules, all claims for undeliverable Distributions shall be made within sixty (60) days after the date such undeliverable Distribution was initially made. After such date (as applicable), all unclaimed property shall be remitted to the Reorganized Debtor; the holder of any such Claim shall not be entitled to any other or further Distribution under this Plan on account of such Claim and such Claim shall be deemed disallowed for purposes of any such Distribution.

All uncashed Distributions shall be handled in accordance with this Article, unless provided otherwise by applicable law. Checks issued by the Debtor in respect of any Allowed Claim shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. The holder of the Allowed Claim to whom such check originally was issued shall make a request for re-issuance of any check to the Reorganized Debtor. Any claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check; provided however checks issued for the final Distribution that become null and void in accordance with the provisions contained herein shall not be re-issued and the holders of such Claims shall waive any right to the re-issuance of such checks. After such date, all funds held on account of such voided check shall be remitted to the Reorganized Debtor; the holder of any such Claim shall not be entitled to any other or further Distribution under this Plan on account of such Claim and such Claim shall be deemed disallowed for purposes of any such Distribution.

So long as the Reorganized Debtor remains current on all other Plan payments, the Reorganized Debtor reserves the right to prepay or settle Allowed Claims except as otherwise provided in this Plan.

If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall instead occur on the next succeeding Business Day.

### 3.4    Objections to Proofs of Claim

A.    _Objections to Claims_: Except as otherwise provided in this Plan in connection with Administrative Claims and Claims of Professionals, objections to Claims must be filed with the Court and served in accordance with the Bankruptcy Rules by the later of (i) ninety (90) days following the Confirmation Date or (ii) thirty (30) days following the date such proof of Claim was timely filed; otherwise, such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code, unless an extension of such time period is

sought by the Reorganized Debtor. Any Claims that are objected to are Disputed Claims until a final order on the objection is entered by the Court.

B. Responses to Objections: Prior to the expiration of twenty-one (21) days from receipt of an objection, the claimant whose Claim has been objected to must file with the Court and serve upon the objecting party a response to such Claim objection. Failure to file such a response within the twenty-one (21) day time period shall cause the Court to enter a default judgment

3.5 **Provisions for Treatment of Disputed Claims/Executory Contracts and Leases**

A. Distributions on Allowed Claims Only: Distributions under the Plan shall be made only to the holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim shall not receive the consideration otherwise provided to holders of Claims in the same Class as such Claim under the Plan. The Claim of any holder of an Allowed Claim that has received notice that the Reorganized Debtor may seek to bring an Avoidance Action against such holder under section 547 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code until such time as the avoidable transfers are returned to the Debtor's estate or the Avoidance Action is otherwise resolved. Disallowance shall include any Assumed Agreement that has any outstanding balance owed to the Debtor. No Distribution shall be made to any holder of an Assumed Agreement unless and until such holder pays any outstanding amount due to the Debtor.

B. Establishment of Disputed Claims Reserve: On the occasion of each payment required under the Plan, the Reorganized Debtor, shall deposit Cash in a segregated, interest bearing account in such amount necessary to pay all Disputed Claims in accordance with the terms of this Plan if such Claims were to become Allowed Claims. This account shall be called the Disputed Claim Reserve. The Reorganized Debtor shall hold the Disputed Claim Reserve in trust for the benefit of the holders of Allowed Claims whose Distributions are unclaimed and the holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan. When a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall release and deliver the Distributions reserved for such Allowed Claims (net of distribution costs) from the Disputed Claim Reserve. To the extent of any funds exist in the Disputed Claim Reserve after resolution of all Disputed Claims and distribution to all Allowed Claims, such funds shall be released to the Reorganized Debtor.

C. Assumption of Executory Contracts and Leases: The contracts and leases listed on **Exhibit A** (the "Assumed Agreements") shall be assumed on the Effective Date and shall vest in the Reorganized Debtor. Entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interests of the Debtor, its Estate, and all parties in interest in this Case. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) each Assumed Agreement is an executory contract or lease which may be assumed by the Debtor, (ii) there are no defaults of the Debtor, no cure payments owing, no compensation due for any actual pecuniary loss and there is adequate assurance of future performance with respect to of each Assumed Agreement, (iii) upon the Effective Date, each

13

Assumed Agreement constitutes legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (iv) the counter party to each Assumed Agreement is required to and ordered to perform under and honor the terms of such Assumed Agreement.

D. <u>Contested Assumption</u>: With respect to an Assumed Agreement to which a timely objection to assumption on the terms and with the findings and conclusions of law specified above has been filed (each a "Contested Assumed Agreement"), the Debtor shall have five (5) business days after the date of entry of an order by the Court with respect to any such timely objection regarding (i) the nature, extent and amount of any default, if any, by the Debtor, (ii) the method of cure thereof, (iii) the method of providing compensation for any actual pecuniary damage as a result of any default, if any, and the method of providing adequate assurance of future performance, and (iv) all other matters pertaining to assumption of such Assumed Agreement, to assume any such Contested Assumed Agreement on the terms and conditions so specified in the order of the Court (or on such other terms and conditions as may be agreed to by the counter party to the Contested Assumed Agreement and the Debtor) by filing a written notice of assumption of such Contested Assumed Agreement (the "Notice of Assumption") in the record of this Case. Any Contested Assumed Agreement which the Debtor elect to assume on the conditions agreed upon by the parties or specified in the order of the Court shall be assumed by filing a Notice of Assumption by the Debtor as of the Effective Date, and the Reorganized Debtor shall satisfy the conditions specified in the order of the Court (or such other terms and conditions as may be agreed to by the counter party to the Contested Assumed Agreement and the Reorganized Debtor), in connection with said Contested Assumed Agreement.

E. <u>Notice</u>: To the Debtor's knowledge, except as set forth on **Exhibit A**, none of the Assumed Agreements have any cure amount due and owing. Therefore, this Plan and its Disclosure Statement shall serve as notice to any counterparty to the Assumed Agreements, except as set forth on Exhibit A, that no cure amount is due and owing. Failure by such counterparty to object to the assumption and allocation of such Assumed Agreement shall be deemed to waive any claim arising under such agreement prior to the Effective Date.

F. <u>Agreements Not Assumed</u>: As of the Effective Date, except for the Assumed Agreements, the Debtor shall be deemed to have rejected any and all unexpired leases and executory contracts to which it is a party and that the Debtor has not previously rejected or assumed pursuant to Section 365 of the Bankruptcy Code. The Confirmation Order shall constitute approval of rejection of such contracts and leases. Such contracts shall be deemed rejected as of the day before the Petition Date.

G. <u>Claims Relating to Rejection</u>: Any Claim arising from a rejected executory contract or unexpired lease shall be a Rejection Claim. A Rejection Claim shall be treated as a General Unsecured Claim under this Plan if, but only if, a proof of Claim is filed within thirty (30) days after entry of the Confirmation Order.

**3.6 <u>Method of Distribution Under the Plan.</u>** The Reorganized Debtor shall make all Distributions required under and in accordance with the Plan. The funding available for such Distributions will be made from funds available from operations of the Reorganized Debtor.

4488109.1
59713.1

### 3.7 Effect of Confirmation

A. **Confirmation Order**: The Bankruptcy Court shall not enter a Confirmation Order unless and until the Confirmation Order shall be reasonably acceptable in form and substance to the Debtor. Until the Effective Date, the Bankruptcy Court shall retain jurisdiction ove the Debtor, as well as the Debtor's assets and properties. Thereafter, the Bankruptcy Court shall continue to maintain jurisdiction including, but not limited to, the subject matters set forth in Section 13.1 of the Plan.

B. **Discharge**: To the fullest extent allowed by the Bankruptcy Code, on the Confirmation Date, and subject to the terms of this Plan, the Debtor shall be discharged from, and this Plan shall constitute an extinguishment and novation of, any Claim or debt of whatever character that arose before the date of such confirmation, and any Claim or debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not—

    (a)    a proof of Claim based on such debt is filed or deemed filed under section 501 of the Code;

    (b)    such Claim is allowed under section 502 of the Bankruptcy Code; or

    (c)    the holder of such Claim has accepted the Plan.

On the Confirmation Date all Liens against any assets and property, except for Liens as explicitly provided in the Plan, shall be deemed extinguished and discharged. Any litigation, including counterclaims, pending against the Debtor as of the Petition Date or that could have been brought against the Debtor prior to the Petition Date, shall be deemed resolved and restructured by the provisions of this Plan, and shall be dismissed with prejudice immediately after the Effective Date.

C. **Binding Effect**: Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor and its respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

D. **Injunction**: Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105, 362 or 524 of the Bankruptcy Code, or otherwise, and in existence on or as of the Confirmation Date, shall remain in full force and effect until the Bankruptcy Court enters a Final Decree in accordance with Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

E. **Retention of Causes of Action**: In accordance with 11 U.S.C. § 1123(b)(3) and under this Plan, the Reorganized Debtor will be vested with the right to object to proofs of Claim. The Reorganized Debtor shall be vested with the right to prosecute, compromise or otherwise resolve the Avoidance Actions.

### 3.8 Effective Date of the Plan: 
The Effective Date shall be _____; provided, however, that the conditions precedent set forth in Article 10 of the Plan have been duly satisfied.

4488109.1
59713.1

### 3.9    Summary of Other Provisions of the Plan

A.    Classes and Subclasses:  Any impaired Class that is not occupied as of the date of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed pursuant to Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan and determining whether the Plan has been accepted by such class pursuant to 11 U.S.C. § 1129.

B.    Amendment, Modification, Withdrawal of Revocation of the Plan:  Modifications of this Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after Confirmation and before its substantial Consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Court after notice and hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  At any time after the Confirmation Date, the Debtor, without the approval of the Court, may modify the Plan to remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan, provided that such modification does not materially or adversely affect the interest of Creditors.

C.    Deemed Acceptance to Modifications:  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

D.    Exemption from Transfer Taxes:  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

E.    Payment of Statutory Fees:  All fees payable pursuant to Chapter 123 of title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date.  Any statutory fees accruing after the Confirmation Date shall constitute Administrative Claims and be paid in accordance with the Plan.

F.    Exculpation and Limitation of Liability:  Except as otherwise provided in this Plan, neither the Debtor, nor any of its respective present or former officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents, and its successors and assigns, as the case may be (collectively, the "Parties"), shall have or incur any claim, obligation, Cause of Action, or liability to one another or to any holder of a Claim, or any other party in interest, or any of its respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of its successors or assigns, for any act or omission in connection with, or arising out of, the Debtor, the Case, negotiation and filing of the Plan, the

16

pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The Debtor hereby waives and releases any claim it may have against any of the Parties arising out of any facts that are now known to it.

      G.    <u>Conditions Precedent to the Effectiveness of the Plan</u>: The effectiveness of this Plan is subject, in addition to the requirements provided in Section 1129 of the Bankruptcy Code, to satisfaction of the following conditions precedent:

    a.    All actions, documents and agreements necessary to implement the Plan shall have been effected or executed;

    b.    The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are determined by the Debtor to be necessary to implement the Plan; and

    c.    The Debtor shall have approved the form and terms of the Confirmation Order.

## IV.    TAX CONSIDERATIONS

Because the tax consequences of the Plan may vary based on individual circumstances, each holder of an Allowed Claim is urged to consult with its own tax advisor as to the consequences of the Plan to it under federal and applicable state, local and foreign tax laws.

## V.    ACCEPTANCE AND CONFIRMATION OF THE PLAN

**5.1**    <u>**Voting Requirements for Confirmation.**</u> The Bankruptcy Code provides that any class of creditors or stockholders whose rights are "impaired" (in general terms, not fully honored) under a proposed plan has the right to vote, as a class, to accept or reject the plan. A class of creditors accepts a plan if more than one-half of the ballots that are timely received from members of the class, representing at least two-thirds of the dollar amount of claims for such ballots that are timely received, are cast in favor of the plan. If a plan impairs any class of claims, then at least one class of impaired claims must vote to accept the plan in order for it to be confirmed. Under the Plan, Classes 2 through 7 are entitled to vote on the Plan.

**5.2**    <u>**Voting Procedures**</u>

    A.    <u>Submission of Ballots</u>

Each Creditor whose Class of Claim is impaired will receive, with this Disclosure Statement, a form of ballots entitled "BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S PLAN" to be used in voting whether to accept or reject the Plan. A pre-addressed envelope for returning the ballots is enclosed for your convenience. Holders of unimpaired Claims and Claims that are not required to be classified are NOT entitled to vote under the Bankruptcy Code and votes by holders of such unimpaired and unclassified Claims are not being solicited.

4488109.1
59713.1

Each holder of an Impaired Claim should first review this Disclosure Statement and the Plan and then complete the ballots. Each such holder of an Impaired Claim shall be entitled to cast one (1) ballot for accepting or rejecting the Plan. All votes to accept or reject the Plan must be cast by using the ballot provided, or a copy of such ballots. The ballots must be signed by the Creditor, or an officer, partner or authorized agent of the Creditor. If a ballot is signed by a trustee, executor, administrator, guardian attorney-in-fact, corporate officer or other acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and submit proper evidence satisfactory to the Debtor of his authority to so act when the ballot is returned. Also, only original signed ballots will be accepted and counted.

Completed and signed ballots must be returned to the Debtor using the enclosed envelope, or if you do not use the enclosed envelope, to the following address:

> Brown McCarroll, L.L.P.
> c/o Afton Dee Sands
> 111 Congress Ave., Ste. 1400
> Austin, Texas 78701
> (512) 481-4856 (facsimile)

Ballots should be returned as soon as possible, and in any event must be returned so that they are actually received by 5:00 p.m. (Central Time) on _____. Ballots received thereafter, or ballots not conforming to the requirements set forth above, may not be accepted and counted.

Except as provided below, unless the ballot being furnished is timely submitted on or prior to the voting deadline together with any other documents required by such ballot, the Debtor may, in its discretion, reject such ballot as invalid and therefore decline to count it in connection with seeking Confirmation of the Plan by the Bankruptcy Court.

Any vote cast to accept or reject the Plan with respect to any Claim to which an objection has been filed will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise. A Creditor's vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the Creditor's acceptance or rejection of the Plan was not in good faith or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

B.      Claim Amounts on Ballots

On each ballot there is a space in which each Creditor may write the amount of such Creditor's Claim. If the Claim amount submitted differs from the amount of the Claim as allowed by Final Order of the Bankruptcy Court or as shown in the Debtor's Schedules, then the dollar amount of such Claim, for voting and Distribution purposes, shall be determined first, by reference to the Final Order allowing such Claim, or if no such order has been entered, then by the lesser of (i) the amount specified in the proof of Claim, and (ii) the amount of such Claim set forth in the Debtor's schedules; provided, however, that if the Claim is not listed on the Debtor's schedules, such Claim shall be deemed to be listed on the schedules in the amount of the proof of Claim solely for voting purposes unless otherwise object to by the Debtor. THE AMOUNT OF THE CLAIM SPECIFIED ON THE BALLOT WILL NOT SUPERSEDE THE ALLOWED

18

AMOUNT OF A CLAIM FOR VOTING PURPOSES AS DETERMINED IN ACCORDANCE WITH THE PRECEDING SENTENCE.  THE DEBTOR RESERVES ALL RIGHTS TO OBJECT TO ANY CLAIM OR TO THE VOTING OF ANY CLAIM

C.    Incomplete Ballots

Any ballot received which does not indicate either an acceptance or rejection of the Plan shall be deemed to constitute an invalid ballot.

D.    Waiver of Defects, Irregularities, etc.

Unless otherwise provided herein or directed by the Court, all questions as to the validity, form, eligibility (including time of receipt), acceptances and revocations or withdrawal of ballots will be determined by the Debtor, whose determination will be final and binding.  The Debtor reserves the absolute right to:  (i) contest the validity of any revocation or withdrawal of any vote on the Plan, (ii) reject any and all ballots not in proper form, and (iii) waive any defects or irregularities or conditions of delivery as to any particular ballot.  The interpretation of the applicable requirements (including those with respect to the ballot and the instructions thereto) by the Debtor, unless otherwise directed by the Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with the deliveries of ballots must be cured within such time as the Debtor (or the Court) determines. Neither the Debtor nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished as to which any irregularities have not theretofore been cured or waived will be invalid.

**5.3    Confirmation of the Plan**

A.    Confirmation Hearing

The Court must hold a Confirmation Hearing before deciding whether to confirm the Plan.  The Plan will not be valid until the Court has entered a Final Order confirming the Plan. Once confirmed and to the extent the other conditions under the Plan are met, the Plan will become effective on the Effective Date.

A hearing on Confirmation of the Plan, and on any objections to the Plan, will be held on _____, (Central Time), in the Bankruptcy Court, Homer Thornberry Judicial Building, Austin Courtroom ___, 903 San Jacinto, Austin, Texas 78701.  Any Creditor, or other party in interest desiring to object to Confirmation of the Plan must file a written objection with the Bankruptcy Court, and serve a copy of the objection on the Debtor and the Office of the United States Trustee, so as to be received no later than 5:00 p.m. (Central Time) on April 23, 2008.  In order to preserve an objection, anyone filing an objection to Confirmation must also attend the hearing on Confirmation, either in person or through counsel.  The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment of that hearing.  UNLESS

4488109.1
59713.1

AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE COURT.

        B.        Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Court will determine whether the Plan satisfies the requirements for Confirmation listed in Section 1129 of the Bankruptcy Code. One of the requirements for Confirmation is that the Plan must be accepted by either Class 1, 2, 3, 4, 5, 6, and/or 7 by at least two-thirds (2/3) in amount and a majority in number of such Allowed Claims whose holders actually cast ballots for acceptance or rejection of the Plan. If the Court determines that all Confirmation requirements are satisfied, it will enter an order confirming the Plan.

The Debtor shall utilize the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of the Plan over the potential rejection by any Class.

## VI.    ALTERNATIVES TO THE DEBTOR'S PLAN OF REORGANIZATION

If the Plan is not confirmed and consummated, the alternatives include: (i) preparation and presentation of an alternative plan of liquidation; or (ii) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

### A.    Alternative Plans of Reorganization

The Debtor believes that failure to confirm the Plan will inevitably result in additional administrative expenses being incurred which will reduce and delay the likelihood of Distributions to General Unsecured Creditors. The Debtor believes that the Plan, as described herein, fairly adjusts the rights of various Classes of Creditors consistent with the distribution scheme embodied in the Bankruptcy Code and enables Creditors to realize the most possible under the circumstances.

### B.    Liquidation Under Chapter 7

One of the requirements to confirm a Chapter 11 plan is that creditors receive at least as much as they would under a Chapter 7 liquidation. In a Chapter 7 liquidation, a Trustee would be appointed to liquidate the Debtor's property and pay the Allowed Claims of Creditors. Property subject to Liens would either be sold for enough to pay the Liens or foreclosed upon by the applicable Secured Creditor. Once the property was liquidated, the Allowed Claims would be paid in the following order[1]:

1.      First, to the Claims of Secured Creditors;

2.      Second, expenses of the Chapter 7 Trustee would be paid;

3.      Third, expenses incurred during the Chapter 11 case and allowed by the Court, including Administrative Claims from the Chapter 11 period of the case would be paid;

---

[1] Subject to prior orders of the Court.

4488109.1
59713.1

4.     Fourth, Priority Claims, would be paid; and

5.     Fifth, any remaining funds would be divided Pro Rata among the General Unsecured Creditors.

The Debtor believes that a liquidation under Chapter 7 would result in a reduced recovery (if any) to holders of General Unsecured Claims because of the additional administrative expenses involved in the appointment of a Chapter 7 trustee for the Debtor and attorneys and other professionals to assist such a Chapter 7 trustee. Accordingly, the Debtor believes that if holders of General Unsecured Claims could or would receive anything in a Chapter 7 liquidation, such holders of General Unsecured Claims may be expected to receive a significantly smaller distribution, if any, pursuant to a Chapter 7 liquidation than under the Plan.

To determine what holders of Claims in each impaired Class would receive if the Debtor were liquidated, the Court must determine what funds could be generated from the liquidation of the Debtor's assets and property in the context of a Chapter 7 liquidation case, which would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor. Such assets amounts would be reduced by post petition Chapter 11 administrative costs, and costs incurred by the Chapter 7 trustee and any professional retained by the Chapter 7 trustee. To determine if the Plan is in the best interest of each impaired Class, the present value of the distributions from the proceeds of the liquidation of the Debtor's assets and property (after subtracting the amounts attributable to the aforesaid Claims) are then compared with the present value offered to such Classes of Claims under the Plan.

A detailed Liquidation Analysis is attached hereto as **Exhibit C** for comparison of payment of all claims under a Chapter 7 liquidation vs. the treatment of claims under the Plan.

## VII.    CONCLUSION AND RECOMMENDATION

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE AND THAT THE PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION. ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS, THUS, THE DEBTOR RECOMMENDS THE CONFIRMATION OF THE PLAN.**

4488109.1
59713.1

Dated:  October 18, 2010

Respectfully submitted

BROWN MCCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (fax)


By:/s/ Kell C. Mercer
    Stephen W. Lemmon
    State Bar No. 12194500
    Kell C. Mercer
    State Bar No. 24007668
    Afton Dee Sands
    State Bar No. 24060555

ATTORNEYS FOR SEDA FRANCE, INC.

4488109.1
59713.1