# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| SEDA FRANCE, INC., § | CASE NO. 10-_____-___ |
| § | CHAPTER 11 |
| DEBTOR § | |
| § | |
| 8301 SPRINGDALE ROAD, #800 § | |
| AUSTIN, TEXAS 78724 § | |
| § | |
| TAXPAYER IDENTIFICATION NO.: § | |
| 26-2145654 § | |

## SEDA FRANCE, INC.'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Seda France, Inc. (the "Debtor-in-Possession) and files this its Motion for Interim and Final Orders Authorizing the Use of Cash Collateral and, in support thereof would respectfully show the Court as follows:

### I. Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* entered in the United States District Court for the Western District of Texas on August 13, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

### II. Background

2. On October 18, 2010 (the "Petition Date"), the Debtor-in-Possession filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et. seq. (the "Bankruptcy Code").

3. The Debtor-in-Possession is a Texas for-profit corporation that develops and internationally distributes home fragrance products, including, but not limited to, candles, bath and body products, diffusers, and room mists. The Debtor-in-Possession operates primarily as a wholesale distributor, marketing its products for resale to companies and/or individuals with store fronts. The Debtor-in-Possession's products are marketed through in-house employees and other independent contractor representatives along with showrooms located in New York, Los Angeles, Dallas, and Seattle. Additionally, the Debtor-in-Possession directly sells its products to its customers on its website located at www.sedafrance.com. Uniquely, the Debtor-in-Possession has a popular custom candle line that allows the Debtor-in-Possession's customers to custom design candles and the candles' packaging for resale or as gifts. For example, spas and other retail establishments have custom designed candles and packaging for resale that are appropriate for their businesses and brides/wedding planners have custom designed candles for guest's gifts at weddings.

4. In early 2008, the Debtor-in-Possession and Aegis Texas Venture Fund II, L.P. ("Aegis") commenced negotiations in an attempt to reach an agreement pursuant to which Aegis would loan funds to the Debtor-in-Possession. The following is a list of the documents circulated among the Debtor-in-Possession and Aegis during the negotiations: (1) Loan and Security Agreement ("Security Agreement"); (2) Intellectual Property Security Agreement ("IP Security Agreement"); (3) Tranche 1 Promissory Note ("Note"); (4) Warrant Purchase Agreement and Warrant to Purchase Shares of Common Stock of Seda France, Inc. ("Warrant Agreements"); and (5) Deposit Account Control Agreement ("Account Agreement") (when collectively, the "Loan Documents"). Although the parties reached a general agreement under which Seda France would borrow up to Two Million, Five Hundred Thousand Dollars ($2,500,000.00) from Aegis, upon information and belief, some, part, or all of the transactional documents were not executed by Aegis and the Debtor-in-Possession in

identical form. In March of 2008, the Debtor-in-Possession borrowed One Million, Two Hundred Twenty Five Thousand Dollars ($1,250,000.00) from Aegis. In August of 2008, the Debtor-in-Possession borrowed an additional One Million, Two Hundred Twenty Five Thousand Dollars ($1,250,000.00) from Aegis (collectively, the "Borrowed Funds"). To date, the Debtor-in-Possession has repaid approximately One Million, Two Hundred Thousand Dollars (exactly $1,198,913.48) to Aegis. Although, upon information and belief, a complete and identical set of documents was never executed, the Debtor-in-Possession is informed that Aegis contends it has an enforceable lien upon virtually all of the assets of the Debtor-in-Possession to secure payment of the Borrowed Funds (the "Alleged Aegis Lien").

5. On July 21, 2010, after the Debtor-in-Possession began struggling to make payments as demanded by Aegis, and years after Aegis provided the Borrowed Funds to the Debtor-in-Possession, Aegis unilaterally filed a UCC Financing Statement with the Texas Secretary of State evidencing a security interest in:

> All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

Then, on July 26, 2010, Aegis unilaterally filed a second UCC Financing Statement against Seda France, Ltd.[1] with the Texas Secretary of State evidencing a security interest in slightly different collateral (when collectively, the "Aegis Financing Statements").

6. Two different law firms filed the differing Aegis Financing Statements. It would appear that Aegis was making a belated attempt to perfect the Alleged Aegis Liens and confusion ensued

---

[1] Seda France, Ltd. converted into Seda France, Inc. (the Debtor-in-Possession) on March 10, 2008.

between the two law firms in describing the collateral within the Aegis Financing Statements. A contributing factor to this confusion was undoubtedly the fact that there was never a meeting of the minds between Aegis and Seda France on the form and content of any security agreement. In any event, because Aegis and Seda France had never reached and entered into an enforceable security agreement, the filing of the Aegis Financing Statements was done without approval of Seda France and was without legal right.

7. Between mid-July 2010 and the Petition Date, the Debtor-in-Possession made multiple proposals to Aegis. Aegis rejected each proposal, stating that it wanted to be given a large ownership position in the Debtor-in-Possession. For the protection of all creditors and parties-in-interest, the Debtor-in-Possession was forced to file for protection under the Bankruptcy Code.

8. On October 18, 2010, the Debtor-in-Possession filed an adversary proceeding [*Seda France, Inc. v. Aegis Texas Venture Fund II, L.P. (In re Seda France, Inc.)*; Adversary No. _____; United States Bankruptcy Court for the Western District of Texas, Austin Division] to avoid the Alleged Aegis Lien (the "Lien Adversary").[2]

### III. Relief Requested

9. Pursuant to Bankruptcy Code § 363(c), a debtor may use cash collateral if: (i) the party or parties having an interest in such cash collateral consent or (ii) the court, after notice and a hearing, authorizes such use.

10. Aegis contends that the Alleged Aegis Lien extends to rents, income, receipts, revenues, issues, profits, and cash proceeds, and that such property constitutes cash collateral ("Aegis' Alleged Cash Collateral"). Despite the fact that the Alleged Aegis Lien is *per se* avoidable pursuant to Bankruptcy Code §§ 544 and 547 and any claim of Aegis is disallowable pursuant to Bankruptcy

---

[2] Nothing contained in this Motion is a waiver of any claim or cause of action that the Debtor-in-Possession may assert or has asserted against Aegis.

4487836.1
59713.1

Code § 502(d), until final resolution of the Lien Adversary, it is appropriate for the Debtor-in-Possession to obtain court approval for use of its cash. In order to pay its employees, purchase products and supplies, maintain services, operate and preserve its business, and meet its administrative responsibilities in this chapter 11 bankruptcy case, the Debtor-in-Possession needs immediate access to its cash in which Aegis asserts an avoidable lien and a disallowable claim. Thus, the Debtor-in-Possession files this Motion and requests authorization to use its cash an interim basis until a final hearing can be conducted on the Debtor-in-Possession's continued use of its cash while it pursues summary judgment on its claims against Aegis.

11. As adequate protection for the use of Aegis' Alleged Cash Collateral, the Debtor-in-Possession agrees to solely to pay those expenses in the amounts and categories set forth on and in accordance with the budget attached hereto as *Exhibit A*. As a result of the Lien Adversary, no other adequate protection will be provided. To be clear, Aegis has a *per se* avoidable lien and a *per se* disallowable claim. As such, Aegis is not entitled to any other relief.

### IV. Immediate and Irreparable Harm

12. Rule 6003 to the Federal Rules of Bankruptcy Procedure generally precludes the Court from authorizing certain relief until twenty-one (21) days after the petition is filed, except to the extent necessary to prevent "immediate and irreparable harm." Specifically, Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:
>
> (a) an application under Rule 2014;
>
> (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001; and
>
> (c) a motion to assume, assign, or reject an executory contract

5

or unexpired lease in accordance with § 365.

13. The Debtor-in-Possession believes that the relief sought in this Motion is critical to achieving a smooth transition to operate as a Debtor-in-Possession and will help preserve its going concern value. Accordingly, the Debtor-in-Possession seeks first day approval of this Motion, with a final hearing to be set as soon as practicable.

14. The relief sought herein is essential to the Debtor-in-Possession's reorganization, and without such relief, the Debtor-in-Possession will suffer immediate and irreparable harm. Therefore, the Debtor-in-Possession respectfully submits that the relief requested represents an exercise of the Debtor-in-Possession's sound business judgment, is in the best interests of the Debtor-in-Possession' estate and creditors, and is necessary to prevent immediate and irreparable harm to its estate. Relief similar to the relief requested herein has been granted in this District. *See, e.g.*, *In re Advanced Living Technologies*, Chapter 11 Case No. 08-50040 (Bankr. W.D. Tex. Jan. 10, 2008); *In re Introgen Therapeutics, Inc.*, Chapter 11 Case No. 08-12442 (Bankr. W.D. Tex. Dec. 3, 2008).

## V. Notice

15. To the best of the Debtor-in-Possession's knowledge, Aegis is the only party possibly affected by the Motion. Due to the emergency nature of the Motion, counsel for the Debtor-in-Possession has been unable to obtain prior approval from Aegis with regard to the relief requested herein. Aegis and/or its counsel will be advised by telephone and facsimile of the filing of this bankruptcy case. Creditors and other parties-in-interest will receive the required notice of the Motion and interim hearing date pursuant to Rule 9013(c) of the Bankruptcy Local Rules.

WHEREFORE, PREMISES CONSIDERED, Seda France, Inc. respectfully requests that this Court: (i) enter an interim order granting it the authority to immediately use cash collateral, in accordance with this Motion and the budget attached hereto as *Exhibit A* until the conclusion

of a final hearing on this Motion; (ii) set this Motion for a final hearing; (iii) at such final hearing, enter a final order granting it the authority to continue the use of cash collateral until a plan is confirmed in this case or the case is dismissed, whichever happens earlier, in accordance with the budget attached hereto as *Exhibit A* (or any subsequently filed budget), and (iv) grant it such other and further relief to which it may be justly entitled.

    Respectfully submitted

    BROWN MCCARROLL, L.L.P.
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701
    (512) 472-5456
    (512) 479-1101 (fax)

    By: */s/ Kell C. Mercer*
        Stephen W. Lemmon
        State Bar No. 12194500
        Kell C. Mercer
        State Bar No. 24007668
        Afton Dee Sands
        State Bar No. 24060555

    ATTORNEYS FOR SEDA FRANCE, INC.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 18th day of October, 2010, a true and correct copy of the foregoing pleading was served, via the Court's CM/ECF notification system, regular first class mail, and/or facsimile on the parties set forth on the attached Service List.

    */s/ Kell C. Mercer*
    Kell C. Mercer

4487836.1
59713.1