

**SIGNED this 22nd day of July, 2011.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-12948-CAG |
| | § | |
| SEDA FRANCE, INC., | § | CHAPTER 11 |
|    Debtor. | § | |

**MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO
AEGIS TEXAS VENTURE FUND II, LP PROOF OF CLAIM**

This Court is presented with the issue of whether an unsecured creditor is entitled to attorneys' fees under a confirmed Chapter 11 plan that pays creditors in full. The majority of courts[1] that have considered the issue have held that an unsecured creditor is not entitled to collect post-petition attorneys' fees, costs, and other similar charges — even if there is an underlying contractual right to do so. *In re Elec. Mach. Enterprises, Inc*., 371 B.R. 549, 549-50 (Bankr. M.D. Fla. 2007). Aegis Texas Venture Fund II, LP ("Aegis") seeks to recover attorneys'

---

[1] *See Adams v. Zimmerman*, 73 F.3d 1164 (1st Cir. 1996); *In re Hedged-Investments Assocs., Inc.*, 293 B.R. 523 (D. Colo. 2003); *In re Loewen Group Int'l, Inc.*, 274 B.R. 427 (Bankr. D. Del. 2004); *In re Pride Companies, L.P.*, 285 B.R. 366 (Bankr. N.D. Tex 2002); *In re Saunders*, 130 B.R. 208 (Bankr. W.D. Va. 1991); *In re Sakowitz, Inc.*, 110 B.R. 268 (Bankr. S.D. Tex. 1989); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57 (Bankr. M.D. Fla. 1987); *In re Marietta Farms, Inc.*, 2004 Bankr. LEXIS Jan. 9, 2007); *In re Hitch*, 2009 Bankr. LEXIS 1232 (Bankr. C.D. Ill. May 29, 2009); *In re nLine Corp*., Case No. 03-13779-LEK (Bankr. W.D. Tex. Nov. 29, 2004).

fees and costs incurred post-petition as part of its unsecured claim against Seda France, Inc. ("Debtor"). In keeping with the majority view, Debtor's objection to Aegis' claim for attorneys' fees incurred post-petition should be sustained.

## BACKGROUND

This matter is referred to this Court under the District Court's Standing Order of Reference. The Court has subject matter jurisdiction under 28 U.S.C. § 157(a) and § 1334(b). Venue is proper under 28 U.S.C. § 1408(1). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) and is deemed a contested matter pursuant to Fed. R. Bankr. Proc. 9014. The Court may render findings of fact and conclusions of law as set forth in Fed. R. Bankr. Proc. 7052(a)(1).

On February 11, 2011, Aegis timely filed its Proof of Claim (the "Aegis Claim") in this Chapter 11 bankruptcy case. The Aegis Claim asserted that, in addition to the principal, interest, and pre-petition attorney's fees under its loan documents with Debtor, Aegis was entitled to recover post-petition attorney's fees as part of its unsecured claim. In this regard, the proof of claim provided that the "Amount of Claim as of Date Case Filed" was "$1,895,225.09 plus all allowable post-petition legal expenses." Aegis Claim, ¶ 1, page 1. Additionally, the Aegis Claim stated:

> Aegis has also incurred post-petition attorney's fees which it believes are recoverable under applicable bankruptcy and non-bankruptcy law. Through December 31, 2010, such fees total $76,125.68. It is estimated that additional post-petition attorney's fees in the amount of approximately $40,000.00 will be incurred during the pendency of Debtor's bankruptcy case. Thus, including incurred and estimated post-petition attorney's fees, the total Aegis claim is $2,011,350.77.

*See* Attachment to Proof of Claim of Aegis Texas Venture Fund II, LP in ***In re Seda France, Inc.***, Bankruptcy Case No. 10-12948-CAG in the United States Bankruptcy Court for the

2

Western District of Texas, Austin Division (the "Attachment to Proof of Claim"), ¶ 4 on page 2 of the Aegis claim.

Debtor filed a limited objection to the Aegis Claim on April 11, 2011 (docket no. 167). The objection cited the four reasons stated by the court in *In re Elec. Mach. Enters., Inc.*, 371 B.R. at 550-552 why post-petition attorneys' fees and costs must be disallowed:

(i) The Bankruptcy Code expressly authorizes the recovery of post-petition attorney's fees only for oversecured creditors and, thus, by implication, prohibits such fees for all others;

(ii) The Supreme Court's opinion in *United Savings Ass'n v. Timbers*, 484 U.S.365 (1988) supports the conclusion that unsecured creditors are not entitled to recover post-petition attorneys' fees;

(iii) Creditors' claims are determined on the petition date, and therefore, cannot include post-petition attorneys' fees and costs; and

(iv) Allowing unsecured creditors to recover post-petition attorneys' fees and costs is inequitable and negatively impacts the administration of bankruptcy cases.

Debtor also argued that the Supreme Court's opinion in *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) provides no authority for allowing unsecured creditors to recover post-petition attorneys' fees and costs. Debtor then stated that even if the fees and costs were allowable, Aegis could not recover them because it failed to file an application for approval as required by Rule 2016.

Aegis filed a response on April 29, 2011 (docket no. 174). Aegis cited the post-*Travelers* decisions of *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143 (2nd Cir. 2009), *In re SNTL Corp.*, 571 F.3d 826 (9th Cir. 2009) and *In re QMECT, Inc.*, 368 B.R. 882 (Bankr. N.D. Cal. 2007) in support of its position. It claimed the post-petition attorneys' fees and costs were allowable for numerous reasons, which can be summarized as follows:

(i) Sections 506(b) and 502(b) have been incorrectly conflated and the maxim of expression unius est exclusion alterius does not apply;

(ii) The *Timbers* holding disallows claims for unmatured interest based on a specific provision of the Code, and because there is not a similar provision that disallows post-petition attorneys' fees, the holding does not control.

(iii) The right to payment for attorneys' fees and costs exists pre-petition, so it is not relevant to whether the creditor has an allowable pre-petition claim that the fees are actually incurred post-petition;

(iv) The potential inconvenience of having to re-compute attorneys' fees claims post-petition can be mitigated by courts setting claim allowance procedures and deadlines;

(v) Because there is not a clear provision of the Code for allowing for post-petition attorneys' fees and costs, that non-bankruptcy legal right should be left intact until such time Congress decides otherwise; and

(vi) Recovery of post-petition attorneys' fees and costs is particularly appropriate where the Debtor's estate is solvent and all unsecured creditors are to be paid in full under the confirmed plan, such as in this case.

Aegis also argued that Rule 2016 does not apply because it only applies when a creditor is seeking to recover fees and expenses "against the estate," rather than where the fees at issue are includable in the creditor's unsecured pre-petition claim. Alternatively, Aegis argued that if Rule 2016 did apply, its application for approval is included in its response.

## ANALYSIS

The Supreme Court's holding in *Travelers* is carefully limited to striking down the *Fobian* Rule. 549 U.S. at 449. It concluded that the Code does not disallow unsecured creditors' claims for attorneys' fees "based *solely* on the fact that the fees at issue were incurred litigating issues of bankruptcy law." *Id.* Further, the Court expressly reserved opinion regarding "whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing" an unsecured creditor's claim for post-petition

4

attorneys' fees. *Id.* at 456. Thus, it is up to this Court to make its own judgment whether post-petition attorneys' fees are allowable.

    1.    Because § 506(b) expressly authorizes the recovery of post-petition attorneys' fees only for oversecured creditors, can it be implied that the Code prohibits such fees for all others? Or does the silence with respect to unsecured creditors permit the allowance of post-petition attorneys fees and costs?

The Supreme Court has said, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of contrary legislative intent." ***TRW Inc. v. Andrews***, 534 U.S. 19, 28 (2001). Congress has clearly expressed its intent to award post-petition attorneys' fees to parties in several circumstances—none of which applies as a general matter to an unsecured creditor's claim for post-petition attorneys' fees:

    (i)    Recovery of post-petition attorneys' fees under § 506(b) is limited to oversecured creditors;

    (ii)    Section 330 permits a court to award reasonable compensation for attorneys' fees incurred during the bankruptcy by the trustee, an authorized committee, or the debtor;

    (iii)    Section 503 allows as an administrative expense reasonable compensation for attorneys' services to the extent that the services benefitted the estate;

    (iv)    Section 362(k) provides for "actual damages, including attorneys' fees" to an individual injured by a violation of the automatic stay; and

    (v)    Section 523(d) provides for an award of reasonable attorneys' fees for a successful debtor in certain nondischargeability actions.

Jennifer M. Taylor & Christopher J. Mertens, *Travelers and the Implications on the Allowability of Unsecured Creditors' Claims for Post-Petition Attorneys' Fees Against the Bankruptcy Estate*, 81 AM. BANKR. L.J. 123, 148-49 (2007). It thus appears that Congress knew how to provide for an award of post-petition attorneys' fees. *Id*. "If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so. But

it did not." *Id.* (citing **In re Saunders**, 130 B.R. 208, 210 (Bankr. W.D. Va. 1991)). To permit an unsecured creditor to recover its post-petition attorneys' fees from the estate would be to expand on the express exceptions Congress provided for in the Code. **Ins. Co. of N. Am. v. Sullivan**, 333 B.R. 55, 61 (D. Md. 2005).

A.    Does The *Timbers* Holding Control?

The specific question at issue in *Timbers* was whether undersecured creditors are entitled to compensation under § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral. 484 U.S. at 369. Answering in the negative, the Court found support in the idea that § 506(b) has the "substantive effect of denying undersecured creditors post-petition interest on their claims." *Id.* at 372. The Court reasoned that § 506(b) permits post-petition interest to be paid only out of that creditor's "security cushion," and an unsecured creditor has no such "security cushion." *Id.* at 372-73. Justice Scalia wrote, "[i]f the Code had meant to give the undersecured creditor . . . interest on the value of his collateral, surely [§ 506(b)] is where that disposition would have been set forth. . . ." *Id.* at 373. There is no reason why Justice Scalia's conclusion should not apply equally to attorneys' fees. Taylor & Mertens, *supra* at 149. Because neither § 506(b) nor any other provision of the Bankruptcy Code permits an unsecured creditor to recover its post-petition attorneys' fees from the estate, unsecured creditors have no clear entitlement to post-petition attorneys' fees. *Id.* This result is consistent with the idea that the Code must be read as a coherent whole. *Id.*

B.   Does The Fact That Creditors' Claims Are Determined On The Petition Date Preclude Post-Petition Attorneys' Fees And Costs?

The three cases cited by Aegis claim that post-petition fees cannot be disallowed merely because they are contingent.[2] The allowability of contingent claims allows an argument to be made that the apparent plain meaning of sections 502(b), 506(a), and 506(b) is in conflict with other provisions of the Code. Mark S. Scarberry, *Interpreting Bankruptcy Code Sections 502 and 506: Post-Petition Attorneys' Fees in A Post-Travelers World*, 15 AM. BANKR. INST. L. REV. 611, 636 (2007). However, Professor Mark Scarberry has proposed that the plain meaning of these three sections provide a three-step analysis that precludes the allowance of post-petition attorney's fees as unsecured claims. *Id.* at 648-652, 657.

First, § 502(b) allows a claim in an amount determined at the petition date. Subsequent increased amounts are part of the post-petition claim not allowed under § 502(b). *Id.* at 648-49. Second, the allowed amount of the claim, as used in § 506(a), determines the secured and unsecured amounts of the creditor's claim. *Id.* at 649. Because § 506(a) refers to "the allowed amount of the claim of [the] creditor," it is a reference to § 502(b). *Id.* Under § 506(a), two amounts, the allowed amount of the claim and the value of the collateral, must be determined, which are then compared and bifurcated with the allowed claim being secured to the extent of the value of the collateral, and any remaining amount creates an unsecured claim. *Id.* As a result, § 506(a) takes the amount of the allowed claim under § 502(b) and either treats it as completely secured or bifurcates it into a secured and unsecured amount. *Id.* Third, § 506(b) provides allowance for an additional amount; in particular, fees, interest, and costs beyond the allowed

---

[2] ***In re SNTL Corp.***, 571 F.3d at 844 (citing 5 *Collier on Bankruptcy* § 553.03[1][i] (15th ed. Updated 2007) ("In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.); *Accord,* **Ogle v. Fidelity & Deposit Co.**, 586 F.3d at 146-48; *See also,* ***In re QMECT***, 368 B.R. at 884 (post-petition attorneys' fees qualify as a "claim" under 11 U.S.C. § 101(5)).

7

amount under § 502(b). *Id.* The words "reasonable fees, costs, and charges" under § 506(b) describe what § 506(b) does for an oversecured claim. *Id.* at 650. The fees, costs, and charges "shall be allowed" under § 506(b) in a similar way that post-petition interest is allowed so long as an agreement or statute provides for them. *Id.* In relying on the Supreme Court's decision in ***United States v. Ron Pair Enter., Inc.***, 489 U.S. 235 (1989), Scarberry explains that § 506(b) adds interest and fees to the "pre-petition amount" of the claim, and because § 502(b) determines the prepetition amount of the claim, which is "as of the date of the filing" of the bankruptcy case, the amount of the secured claim held by an oversecured creditor prior to the application of § 506(b) cannot include post-petition attorney's fees. Scarberry, *supra* at 651. Scarberry concludes:

> Because post-petition fees are not allowed by section 502(b) but rather by section 506(b), we are left with the clear conclusion that post-petition fees cannot be allowed in favor of undersecured creditors or wholly unsecured creditors, neither of whom receive any benefit from section 506(b). That conclusion establishes, as a matter of the plain meaning of sections 502(b), 506(a), and 506(b), as they deal with claims, that post-petition fees are not allowable on unsecured claims.

*Id*.

C. <u>Does Policy Support The Recovery Of Post-Petition Attorneys' Fees</u>?

Aegis' response emphasizes preserving non-bankruptcy legal rights when there is not a clear provision of the Code modifying those rights. However, it is beyond doubt that Congress has chosen to modify state law rights with respect to creditors' claims against the estate for post-petition attorneys' fees. Taylor & Merterns, *supra* at 158. "The plain language of section 506(b) expressly provides for the award of attorneys' fees in bankruptcy proceedings, without reference to contrary state law." *Id.* at 158-59 (citing ***In re Schriock***, 104 F.3d 200, 202 (8th Cir. 1997)). As a result, an oversecured creditor's contract-based claim for post-petition fees may be allowable in bankruptcy even where the underlying contract is invalid under state law. *Id.* (citing

*Schriock*, 104 F.3d at 202-03). Further, prior to the amendment of § 506(b), fees arising only under a state statute, without a contractual basis, were disallowed as not arising out of an agreement. Taylor & Merterns, *supra* at 159.

Some have argued that where a "debtor freely entered into the contract and must have known the potential cost," "[i]t would be inequitable to allow the debtor to avoid this obligation." *Id.* at 160-61 (citing **In re Tri-State Homes, Inc.**, 56 B.R. 24, 27 (Bankr. W.D. Wis. 1985)). However, this argument disregards the fact that the estate belongs not to the debtor, but to the creditors who bear the entire burden of a supposedly bargained for fee provision while receiving none of the benefit. Taylor & Merterns, *supra* at 161. Those cases awarding post-petition fees to successful creditors in nondischargeability actions or to debtors are not pertinent because such an award is made against an individual personally and is to be paid by that individual. *Id.* On the other hand, an unsecured creditor's claim for fees is to be paid by the bankruptcy estate. *Id.* Fee claims asserted against the estate must be analyzed differently from attorneys' fees sought personally against an opposing party in bankruptcy litigation, and must involve a consideration of bankruptcy policies, including the policy of equal distribution among creditors. *Id.*

A central purpose of the bankruptcy system is "to secure equality among the creditors of a bankrupt."[3] Essentially, similarly situated creditors must be treated the same. Allowing certain types of unsecured creditors, such as sophisticated commercial claimants, to recover post-petition attorneys' fees while other unsecured creditors are not able to recover such fees violates

---

[3] *See Elec. Mach.*, 371 B.R. at 551 (quoting **Boese v. King**, 108 U.S. 379, 385-86, 2 S.Ct. 765, 27 L.Ed. 760 (1883)).

9

this central purpose and keeps similarly situated creditors from being treated the same.[4] As recognized by Judge Robert L. Jones in ***Pride Companies***:

> It is not equitable to deplete everyones 'pot,' only because of an asserted right granted by a contract . . . bankruptcy routinely alters creditors rights, and this is simply a situation where the policy of ratable distribution and equitable treatment of the varying interests in bankruptcy should override any asserted rights by unsecured creditors to recover attorney's fees.

Moreover, allowing unsecured creditors to recover post-petition attorneys' fees negatively impacts and inconveniences the administration of bankruptcy cases.[5] The claims process would continue endlessly because attorneys for unsecured creditors would continually file new claims and/or amend previously allowed claims to include post-petition attorneys' fees and costs.[6] This is inefficient and impractical. As stated in ***Electric Machinery***: "[t]he practical consequences of such a result would be disastrous for the administration of the bankruptcy system. The administrative inconvenience this would cause in a chapter 11 case would be intolerable."[7]

Fees awarded to an oversecured creditor is consistent with equitable principles because the fees are paid from the creditor's "security cushion," and therefore does not interfere with the administration of the estate. *Id.* The court in ***Qmect***, 368 B.R. at 886, argued that, to the contrary, awarding secured creditors their post-petition fees diminishes the dividend to unsecured creditors; consequently, the policy of equitable distribution should not stand in the way of awarding unsecured creditors their post-petition fees. Taylor & Merterns, *supra* at note 278. However, this argument overlooks the fact that oversecured creditors have a property interest in the security or equity cushion that is used to pay an oversecured creditor's post-petition fees

---

[4] ***Elec. Mach.***, 371 B.R. at 551.
[5] ***Elec. Mach.***, 371 B.R. at 553.
[6] *Id.*
[7] *Id.*

under § 506(b). *Id. See also* **Timbers**, 484 U.S. at 370-71. While allowing a secured creditor's claim for post-petition fees may in fact reduce the amount available for distribution to unsecured creditors, it is not inequitable to do so because, by virtue of its property interest, an oversecured creditor would have a right to collect that amount before an unsecured creditor, even under state law. Taylor & Merterns, *supra* at note 278. Moreover, the Code expressly allows a post-petition fee claim of an oversecured creditor, but has no such provision for an unsecured creditor. *See* 11 U.S.C. § 506(b). For these reasons, a rule allowing the post-petition fee claims of oversecured creditors but not unsecured creditors is not inequitable.

D.  Does The Fact That The Debtor Is Solvent Allow For The Recovery Of Post-Petition Fees?

Aegis cites ***In re Gencarelli***, 501 F.3d 1, 7 (1st Cir. 2007), for the proposition that post-petition fees should be added to unsecured claims where the debtor is solvent. However, to come to such a conclusion, the First Circuit engaged in circular reasoning by assuming that unsecured claim holders could obtain post-petition fees, and then departed from the text of the Code to make sure that holders of secured claims got treatment at least as favorable:

> We add that disallowing claims in their entirety based on section 506(b) defies common sense. It is apodictic that 'unsecured creditors may recover their attorneys' fees, costs and expenses from the estate of a solvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law.' ***In re Dow Corning Corp***., 456 F.3d 668, 683 (6th Cir. 2006). Thus, under the statutory scheme envisioned by the debtor (and adopted by the lower courts), unsecured creditors would be permitted to reap the full benefit of their contractual bargains through the medium of section 502, while oversecured creditors would be uniquely singled out for unfavorable treatment by the operation of section 506(b). There is no conceivable explanation as to why Congress might have wanted oversecured creditors to be treated in so draconian a fashion. Creating that sort of uneven playing field would be antithetic to the general policy of the Code, which strongly favors oversecured creditors.

11

Scarberry, *supra* at 647 (citing **Gencarelli**, 501 F.3d at 6). The court went on to mistakenly point out that its role was to make sure that a solvent debtor did not use the Code to change any of its legal obligations:

> Let us be perfectly clear. This is a solvent debtor case and, as such, the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law.

**Scarberry**, *supra* at 647-48 (citing **Gencarelli**, 501 F.3d at 7). These statements of grand principle should be anchored in a persuasive textual analysis, rather than in the notion that solvent debtors are not entitled to receive any relief under the Code. Scarberry, *supra* at 648. The Code contains no requirement that debtors be insolvent; a solvent debtor may nevertheless be in financial difficulty, seek relief under the Code in good faith, and modify the rights of creditors. *Id.*

## CONCLUSION

Because none of Aegis' arguments regarding the allowability of post-petition attorneys' fees pass muster, the Court does not have to address whether Rule 2016 was applicable. Thus, Debtor's objection to Aegis' claim for attorneys' fees incurred post-petition should be sustained. Additionally, Aegis' claims for fees in connection with its preparation of its fee application is similarly denied. For the reasons stated herein, Aegis' claim for attorneys' fees is DENIED.

# # #